**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION**

| | |
|---|---|
| WINZOIR VAN DURR, | |
| Plaintiff, | |
| v. | Civil Action No. 8:12-cv-02137-AW |
| TIMOTHY FRANZ GEITHNER et al., | |
| Defendants. | |

**MEMORANDUM OPINION**

Defendant's Motion to Dismiss or, Alternatively, for Summary Judgment is pending before the Court. The Court has reviewed the record and deems a hearing unnecessary. For the following reasons, the Court **GRANTS** Defendant's Motion to Dismiss.

**I.    FACTUAL AND PROCEDURAL BACKGROUND**

Pro se Plaintiff Winzoir Van Durr, an African-American male, has filed a pro se Complaint sounding in disability discrimination. Plaintiff has named Timothy Franz Geithner, onetime Secretary of the Treasury, as Defendant. Jack Lew has succeeded Geithner as Secretary of the Treasury. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, the Court substitutes Lew, in his official capacity, as Defendant.

Plaintiff alleges that he worked for Defendant from December 2001 to July 2007, at which time he alleges that Defendant constructively discharged him. On March 22, 2006, Plaintiff requested a reasonable accommodation based on having cancer. Doc. No. 27-5 at 1. Defendant denied his request on June 2, 2006. On the same day, Plaintiff orally complained to an EEO counselor. *See id.* On July 12, 2006, Plaintiff filed a formal complaint of discrimination

1

with Defendant's EEO office (Office). In his complaint, Plaintiff alleges that Defendant discriminated against him because of his "race, age, sex, reprisal [sic], and physical and mental disability." Doc. No. 27-3 at 3. The gravamen of Plaintiff's complaint is that Defendant unlawfully denied his request for a reasonable accommodation for his cancer condition. To support this claim, Plaintiff states that Defendant "constructively denied me the reasonable accommodation and stonewalled, hell hacked and used abused means and refuse to answer or cooperate with me and refused or failed to provide me an answer to my request [sic]." *Id.*

On September 29, 2006, Defendant sent Plaintiff a letter stating that it had received Plaintiff's complaint and accepted it for processing. Doc. No. 27-4. The letter references prior communications between Plaintiff and an EEO counselor and states that Plaintiff had agreed to withdraw certain claims. Based at least in part on these prior communications, the letter states that the Office planned to investigate six claims. *Id.* at 1–2. Three of these six claims relate to Plaintiff's allegation that Defendant failed to provide him with a reasonable accommodation for his cancer, such as being denied sick leave and the option to work from home. Similarly, claim 4 states that "[b]eginning on August 14, 2006, and on-going, the Complainant was placed on Absent Without Leave (AWOL) status during times when he had requested sick leave status." *Id.* at 2. The remaining two claims neither state nor relate to constructive discharge. *See id.* The record does not reflect that Plaintiff ever challenged this characterization of his complaint.

On August 27, 2007, the Office issued a Final Agency Decision (FAD) on Plaintiff's complaint. Doc. No. 27-5. Although the Office dismissed several of Plaintiff's claims, the Office found that Defendant had discriminated against Plaintiff based on disability when it delayed and subsequently denied Plaintiff's request to work from home. *Id.* at 15. Consequently, inter alia,

the Office ordered Defendant to pay Plaintiff "compensatory damages in the amount of $4,000." *Id.* at 17.

Plaintiff appealed the Office's FAD. On February 19, 2010, the EEOC issued an appellate decision affirming in part and reversing in part the Office's FAD. In pertinent part, the EEOC concluded that Defendant also discriminated against Plaintiff based on disability when it denied Plaintiff sick leave and placed him on AWOL status. *See* Doc. No. 27-6 at 2. The EEOC further ordered Defendant to pay Plaintiff additional compensatory damages, ordering Plaintiff to submit evidence of such damages. *See id.*

Through letters submitted in April 2010, Plaintiff requested $1,475,570 in compensatory damages. Plaintiff based this figure partly on allegations that Defendant's discrimination forced him to retire earlier than he had planned, thereby causing him to sell his house at a loss and incur other losses. *See id.* Plaintiff essentially concedes that he first raised this theory of constructive discharge in the April 2010 correspondence. *See* Doc. No. 29 at 3. In a second FAD (Second FAD) issued on July 12, 2010, the Office awarded Plaintiff $40,000 in compensatory damages. *Id.* at 5. The Office did not base this award on Plaintiff's assertion that Defendant had constructively discharged him, concluding that Plaintiff "did not allege constructive discharge and there was no adjudication or decision on that issue." *Id.* at 4. On February 3, 2011, the EEOC issued a decision affirming the Second FAD. Doc. No. 27-7. The EEOC likewise concluded that Plaintiff's constructive discharge "claim was not part of his complaint [] and the Commission did not find constructive discharge." *See id.* at 6.

On October 20, 2011, Plaintiff filed the instant action in the Northern District of Florida. Plaintiff filed his First Amended Complaint on January 4, 2012. Doc. No. 7. Plaintiff generally alleges that Defendant discriminated against him by denying his requests for "reasonable

3

accommodations, sick leave, annual leave, and leave without pay." Doc. No. 7 at 4. Plaintiff further alleges that he did not voluntarily retire in July 2007. Rather, Plaintiff alleges that Defendant forced him to retire because missing work was the only way that he could obtain proper treatment for his cancer. *See id.* at 5.

The Northern District of Florida transferred the case to this District. *See* Doc. No. 18–19. After Court-ordered service, Defendant filed a Motion to Dismiss or, Alternatively, for Summary Judgment (Motion to Dismiss). *See* Doc. No. 27-1. Defendant argues that Plaintiff's claims fail because he (1) did not assert a constructive discharge claim in his EEO complaint and (2) did not contact an EEO counselor within forty-five days of his alleged constructive discharge. This Motion is ripe.

## II. STANDARD OF REVIEW

### A. Motion to Dismiss—12(b)(1)

Generally, "a failure by the plaintiff to exhaust administrative remedies concerning a Title VII claim deprives the federal courts of subject matter jurisdiction over the claim." *Jones v. Calvert Grp., Ltd.*, 551 F.3d 297, 300–01 (4th Cir. 2009) (citation omitted). "Courts may consider materials outside the pleadings to determine whether they have subject matter jurisdiction." *Bennett v. Kaiser Permanente*, Civil Action No. 10–CV–2505 AW, 2013 WL 1149920, at *2–3 (D. Md. Mar. 20, 2013) (citation omitted). Although the Fourth Circuit has held that the failure of a federal employee to timely contact an EEO counselor does not, per se, deprive courts of subject matter jurisdiction, the issue is still whether the employee has exhausted administrative remedies. *See Zografov v. V.A. Medical Ctr.*, 779 F.2d 967, 969–70 (4th Cir. 1985). "Motions to dismiss for failure to exhaust administrative remedies are governed by Fed. R. Civ. P. 12(b)(1) . . . ." *Khoury v. Meserve*, 268 F. Supp. 2d 600, 606 (D. Md. 2003)

(citation omitted); *Puryear v. Shrader*, Civil No. PJM 11–3640, 2013 WL 1833262, at *1 (D. Md. Apr. 30, 2013) (citation omitted). "[I]f the governmental entity challenges jurisdiction under Rule 12(b)(1) . . . the court is free to consider exhibits outside the pleadings to resolve factual disputes concerning jurisdiction." *Zander v. United States*, 843 F. Supp. 2d 598, 603–04 (D. Md. 2012) (alteration in original) (citation and internal quotations marks omitted).

**B.     Motion to Dismiss 12(b)(6)**

The purpose of a 12(b)(6) motion to dismiss is to test the sufficiency of the plaintiff's complaint. *See Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). In two recent cases, the U.S. Supreme Court has clarified the standard applicable to Rule 12(b)(6) motions. *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). These cases make clear that Rule 8 "requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Twombly*, 550 U.S. at 556 n.3 (quoting Fed. R. Civ. P. 8(a)(2)). This showing must consist of at least "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

In deciding a motion to dismiss, the court should first review the complaint to determine which pleadings are entitled to the assumption of truth. *See Iqbal*, 129 S. Ct. at 1949–50. "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 1950. In so doing, the court must construe all factual allegations in the light most favorable to the plaintiff. *See Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 (4th Cir. 1999). The Court need not, however, accept unsupported legal allegations, *Revene v. Charles County Commissioners*, 882 F.2d 870, 873 (4th Cir. 1989), legal conclusions couched as factual allegations, *Papasan v. Allain*, 478 U.S. 265, 286 (1986), or conclusory factual allegations

5

devoid of any reference to actual events, *United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979).

**C.    Summary Judgment**

Summary judgment is appropriate only "if the movant shows that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986). The Court must "draw all justifiable inferences in favor of the nonmoving party, including questions of credibility and of the weight to be accorded to particular evidence." *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 520 (1991) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). To defeat a motion for summary judgment, the nonmoving party must come forward with affidavits or similar evidence to show that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A disputed fact presents a genuine issue "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. Material disputes are those that "might affect the outcome of the suit under the governing law." *Id.*

Although the Court should believe the evidence of the nonmoving party and draw all justifiable inferences in his or her favor, the nonmoving party cannot create a genuine dispute of material fact "through mere speculation or the building of one inference upon another." *See Beal v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985). Further, if a party "fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may consider the fact undisputed for purposes of the motion." Fed. R. Civ. P. 56(e)(2). Finally, hearsay statements or conclusory statements with no evidentiary basis cannot

support or defeat a motion for summary judgment. *See Greensboro Prof'l Firefighters Ass'n, Local 3157 v. City of Greensboro*, 64 F.3d 962, 967 (4th Cir. 1995).

## III. LEGAL ANALYSIS

"Prior to filing a law suit alleging violations of the ADA . . . , a plaintiff must first exhaust administrative remedies." *Snead v. Bd. of Educ. of Prince George's Cnty.*, 815 F. Supp. 2d 889, 894 (D. Md. 2011) (citations omitted). *Lewis v. MV Transp., Inc.*, Civil Action No. 8:12–cv–00983–AW, 2012 WL 4518541, at *2–3 (D. Md. Sep. 28, 2012) (citation and internal quotation marks omitted). "Under [the ADA], the exhaustion requirements and filing procedures are identical to those applicable to claims under Title VII." *Id.* (alteration in original) (citations and internal quotation marks omitted).[1]

"Before a plaintiff has standing to file suit under Title VII, he must exhaust his administrative remedies . . . ." *Bryant v. Bell Atl. Md., Inc.*, 288 F.3d 124, 132 (4th Cir. 2002) (citation omitted). The contents of the charge determine the scope of the plaintiff's right to file a federal lawsuit. *Id.* (citation omitted). Usually, "[o]nly those discrimination claims stated in the initial charge, those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint may be maintained in a subsequent [employment discrimination] lawsuit." *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 963 (4th Cir. 1996). Furthermore, federal employees asserting claims under the ADA and/or Rehabilitation Act "must initiate contact with a Counselor within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action." 29 C.F.R. § 1614.105(a)(1). "A district court [generally] must

---

[1] To the extent Plaintiff asserts a claim under the Rehabilitation Act, Title VII's administrative exhaustion requirements would apply. "A federal employee seeking to file an action based on the Rehabilitation Act must first exhaust his administrative remedies promulgated pursuant to Title VII and set forth in EEOC regulations." *Emmert v. Runyon*, --- F. App'x ----, No. 98-2027, 1999 WL 253632, at *2–3 (4th Cir. Apr. 29, 1999) (citations omitted).

dismiss an employment discrimination claim if the plaintiff fails to seek EEOC counseling within the prescribed time period." *See Emmert*, 1999 WL 253632, at *2–3; *but cf.* 29 C.F.R. § 1614.105(a)(2) (The 45-day period is extended where "the individual shows that he or she was not notified of the time limits and was not otherwise aware of them."). "[C]onstructive discharge is a discrete discriminatory act requiring administrative exhaustion." *Spencer v. Ashcroft*, 147 F. App'x 373, 375 (4th Cir. 2005) (citing *Young v. Nat'l Ctr. for Health Serv. Research*, 828 F.2d 235, 237–38 (4th Cir.1987)).

In this case, Plaintiff has failed to exhaust administrative remedies on his constructive discharge claim. Although Plaintiff alleges in his July 12, 2006 EEO complaint that Defendant "constructively denied" and "stonewalled" his requests for a reasonable accommodation, Plaintiff does not satisfactorily assert that Defendant's stonewalling forced him to quit. Indeed, Plaintiff still worked for Defendant when he filed the EEO complaint in July 2006 and continued to do so for a year thereafter. Nor could one reasonably infer from the complaint that Defendant's conduct might eventually force Plaintiff to quit. Although the complaint expresses considerable frustration with Defendant's stonewalling, the allegations do not indicate that the conduct was so deliberate and intolerable that it would make Plaintiff quit. *See Cannon v. Paulson*, 531 F. Supp. 2d 1, 7 (D.D.C. 2008) (holding that constructive discharge claims are not reasonably related to reasonable accommodation claims); *cf. Johnson v. Shalala*, 991 F.2d 126, 132 (4th Cir. 1993) (suggesting that only a complete failure to accommodate, in the face of repeated requests, suffices to show the deliberateness necessary for constructive discharge).

Other considerations support the dismissal of Plaintiff's constructive discharge claim. First, Plaintiff never challenged the Office's characterization of his claims as not relating to constructive discharge. Second, Plaintiff does not allege, and the record does not reflect, that the

Office ever investigated the theory that Defendant constructively discharged Plaintiff. *See Jenkins v. Gaylord Entm't Co.*, No. 8:10–cv–00633–AW, 2011 WL 6755158, at *3 (D. Md. Dec. 23, 2011) (citing *Miles v. Dell, Inc.*, 429 F.3d 480, 492 (4th Cir. 2005)) (holding that the EEOC's failure to investigate a particular claim of discrimination is evidence that said claim is not reasonably related to the administrative complaint). Third, Plaintiff does not allege, and the record does not reflect, that Plaintiff ever moved to amend his original complaint by way of adding a constructive discharge claim.

Even if Plaintiff's constructive discharge claim reasonably related to his complaint, Plaintiff still failed to contact an EEO counselor within forty-five days of the alleged constructive discharge. Plaintiff does not allege, nor does the record reflect, that he contacted an EEO counselor within forty-five days of his July 2007 resignation. Indeed, Plaintiff failed to even raise the theory of constructive discharge until April 2010. Although Plaintiff contacted an EEO counselor in June and July 2006, this contact occurred nearly a year before Plaintiff resigned. Although Plaintiff might argue that Defendant's conduct constitutes a continuing violation, courts typically consider constructive discharge as a "discrete discriminatory act requiring administrative exhaustion." *Spencer*, 147 F. App'x at 375 (citation omitted). Finally, Plaintiff neither alleges nor argues that Defendant failed to notify him of the 45-day period and that he otherwise lacked awareness of it. In fact, Plaintiff's actions in filing his initial EEO complaint suggest just the opposite.

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendant's Motion to Dismiss. A separate Order follows.

| August 12, 2013 | /s/ |
| --- | --- |
| Date | Alexander Williams, Jr.<br>United States District Judge |